# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| EUGENE TRAMMELL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO: 5:13-CV-441-MTT-MSH |
| | : | 42 U.S.C. § 1983 |
| BRIAN OWENS, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATION

Presently pending before the Court is Defendants' motion to dismiss Plaintiff's Complaint. (ECF No. 8.) For the reasons explained below, it is recommended that Defendants' motion to dismiss be denied, and the stay of discovery be lifted upon the district judge's ruling on the motion and this Report and Recommendation.

## BACKGROUND

Plaintiff, formerly a prisoner at Georgia State Prison ("GSP"), filed the instant lawsuit under 42 U.S.C. § 1983 alleging constitutional civil rights violations against Georgia Department of Corrections ("GDOC") Commissioner Brian Owens and former GSP Warden Bruce Chatman. (Compl. 1, ECF No. 1.) Plaintiff claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by their deliberate indifference to a substantial risk of serious harm to him in crafting and/or enforcing policies which led to serious injury inflicted upon Plaintiff by another inmate. (*Id.* at 1-2.)

According to the Complaint, Plaintiff was housed at GSP in Unit G-2 along with inmate Travonta Mitchell ("Mitchell"). (Compl. 3.) On November 29, 2011, Mitchell threatened to attack Plaintiff in their cell, prompting Plaintiff to bang on the door to get the attention of officers. (*Id.*) Plaintiff pleaded with the first officer on the scene for help, but was told that the officer-in-charge must be called. (*Id.*) When the officer-in-charge arrived, Plaintiff repeated his statement that Mitchell had threatened to attack him. (*Id.*) The officer-in-charge ordered Mitchell to place his hands through the door slot in order to be "cuff[ed] up," but Mitchell refused. (*Id.*) The officer-in-charge then told Plaintiff, "there's nothing I can do" and left. (*Id.*)

Mitchell then attacked Plaintiff, cutting him "across his face with a razor, causing an eight inch slash requiring 60 stitches, and leaving a permanent scar." (*Id.* at 4.) Following the attack, Plaintiff informed the first officer on the scene, who had returned for medical call with the "pill nurse," that he had been attacked, but the officer responded that there was nothing he could do. (*Id.*) Other officers then came to the cell door, saw Plaintiff's injuries, and left. (*Id.*) Eventually, three officers returned to the cell and "stop[ped] the attack." (*Id.*) Plaintiff does not specify how much time passed between these encounters with officers or how long the attack was ongoing.

Plaintiff asserts that Defendant Owens is the GDOC official responsible for "development, implementation and maintenance of policies and procedures which protect prisoners from attacks from other prisoners." (*Id.* at 2.) He asserts that Defendant Chatman was the GSP official responsible for the "establishment and implementation of practices and policies concerning inmate safety." (*Id.* at 3.) According to Plaintiff, "[t]he

2

procedures in place at [GSP] were not adequate to the task of protecting inmates from attacks by other inmates." (Compl. 4.) He further states that it "is the defendants' policy to require correctional officers to hand cuff inmates engaged in an attack against another inmate before officers may enter the cell to stop the attack," and also "to provide razor blades in the form of shaving implements to inmates." (*Id.*) Therefore, Plaintiff concludes, Defendants were deliberately indifferent to the risk posed by these deficient policies and violated Plaintiff's Eighth Amendment rights.

## DISCUSSION

### I.  Plaintiff States a Claim for Deliberate Indifference

Defendants contend that Plaintiff's Complaint fails to state a claim upon which relief can be granted. (Defs.' Br. in Supp. of Mot. to Dismiss 3, ECF No. 8-1.) Defendants argue that even accepting all of Plaintiff's facts as true, he has not shown that they have violated the Eighth Amendment sufficient to warrant relief under 42 U.S.C. § 1983.

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

555.  "[A] formulaic recitation of the elements of a cause of action will not do[.]"  *Id.*  Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

Plaintiff alleges that Defendants violated his Eighth Amendment right against cruel and unusual punishment.  It is well settled that prison officials have "a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Although not every injury inflicted by another inmate results from a violation of the Constitution, the Eighth Amendment is violated if a prisoner is seriously injured as a result of a "prison official's 'deliberate indifference' to a substantial risk of serious harm."  *Id.* at 828, 834.

However, the Eleventh Circuit has held that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).  "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  *Id.* (citation omitted).  "[T]he causal connection may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights."  *Hartley v. Parnell*, 193

4

F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted).

Plaintiff makes no allegation that Defendants personally participated in the events leading to his injuries. The issue, therefore, is whether Plaintiff has alleged sufficient facts in his Complaint to show that Defendants (1) imposed an "improper custom or policy," and (2) that the custom or policy resulted in a constitutional violation. Plaintiff alleges that a combination of two policies led to the violation of his constitutional rights. First, Defendants had a policy allowing prisoners to obtain razor blades in the form of shaving implements. (Compl. 4.) Second, Defendants had a "policy to require correctional officers to hand cuff inmates engaged in an attack against another inmate before officers may enter the cell to stop the attack." (*Id.*) Finally, Plaintiff alleges that because of these policies, the floor officers were deliberately indifferent to a substantial risk of serious harm which caused him injury. (*Id.*)

According to the Complaint, these policies led to Plaintiff's injuries in the following way: (1) Plaintiff was locked in a cell with Mitchell who had access to a razor blade due to Defendants' policy; (2) Mitchell threatened to attack Plaintiff; (3) Plaintiff notified the officers outside the cell that he was threatened; (4) the officers came to the cell; (5) the officers attempted to get Mitchell to submit to handcuffs, but he refused; (6) the officers then told Plaintiff "there is nothing [we] can do" in response to the threatened attack because Mitchell refused to "cuff up" and Defendants' policy forbids entering the cell until Mitchell was cuffed; (7) the officers walked away leaving Plaintiff in the cell with Mitchell; and (8) Plaintiff was attacked by Mitchell with the razor blade causing injuries.

For Defendants to be liable, Plaintiff must show that the policies resulted in the

violation of his constitutional rights by the officer's deliberate indifference to his safety. To show deliberate indifference to safety, Plaintiff must first show that "a condition of his confinement poses an unreasonable risk of serious damage to his [] health or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Next, Plaintiff must show that the official was "subjectively aware" of and nonetheless disregarded an excessive risk to the inmate's safety. *Farmer*, 511 U.S. at 828.

The above cited facts are sufficient to state a claim for deliberate indifference by the officers. Plaintiff has shown that he was locked in a cell with another inmate who specifically threatened him with harm, and had the capacity to follow through on that threat. Although the Court cannot use the "advantage of hindsight" to determine whether a substantial risk of harm existed, *Smith v. Reg'l Dir. of Fla. Dep't of Corr.*, 368 F. App'x 9, 14 (11th Cir. 2010), the facts alleged show that Mitchell "posed an unreasonable risk of serious damage to [Plaintiff's] health or safety" immediately prior to the attack. Furthermore, Plaintiff alleges that he specifically informed the floor officers that he had been directly threatened by Mitchell and pleaded for help. The floor officers requested Mitchell submit to restraints, but when he refused they told Plaintiff there was nothing they could do and walked away. Mitchell then attacked Plaintiff. After the attack, at least four officials allegedly came to the cell door, either were told about or saw that Plaintiff had been attacked by Mitchell, and again walked away. These facts show subjective knowledge on the part of multiple officers and a disregard for the risk posed against Plaintiff. Plaintiff has therefore shown a cause of action for deliberate indifference to a substantial risk of serious harm in violation of the Eighth Amendment.

The allegations in Plaintiff's Complaint sufficiently allege that these policies exist, that they were either created or implemented by Defendants, and that the policies resulted in a violation of Plaintiff's Eighth Amendment rights in the form of the officers' deliberate indifference to a serious risk of harm. Defendants' argument that Plaintiff has failed to state a claim is unavailing, and their motion should be denied.

## II.     Defendants Are Not Entitled To Qualified Immunity

Defendants also argue that Plaintiff's Complaint should be dismissed because Defendants are entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. City of Naples*, 501 F. App'x 910, 915-16 (11th Cir. 2012) (internal quotation marks and citation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks and citation omitted).

"In order to receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Id.*  Once the defendant shows that he or she was acting within her discretionary authority, the burden then shifts to the plaintiff to establish that qualified immunity does not apply. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004).

7

There is no question that in this case Defendants were acting within their discretionary authority. *See, e.g., Holloman ex. rel Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (explaining that a government employee is acting within his discretionary authority when he "was (a) performing a legitimate job-related function . . . , (b) through means that were within his power to utilize[]"). Because that determination is made, the burden then shifts to Plaintiff to show that the Defendant is not entitled to qualified immunity.

"To overcome an official's claim of qualified immunity, the plaintiff must show that: (1) the official violated a constitutional right; and (2) that right was clearly established at the time of the alleged violation." *Anderson*, 501 F. App'x at 916 (citation omitted).[1] The Court therefore must determine whether the Plaintiff has shown that the defendants' conduct violated a constitutional right and whether that right is clearly established. As Defendants phrase the issue, "the relevant question to be answered is the 'objective (albeit fact specific) question' of whether a 'reasonable officer' would have believed the defendant's action to be lawful in light of clearly established law and the information possessed by the defendant." (Def.'s Br. 12, *citing Anderson v. Creighton*, 483 U.S. 635, 641 (1987).)

Plaintiff has alleged sufficient facts to overcome Defendants claim of qualified immunity. The policies that Plaintiff alleges are implemented by Defendants as the officials overseeing the GDOC and GSP, if proved, would clearly violate established law

---

[1] Courts should use their discretion in determining which prong of the qualified immunity inquiry to address first. *McCullough*, 559 F.3d at 1205.

8

such that a "reasonable" official could not believe them to be lawful. As Plaintiff describes the policies, a correctional officer would be precluded from entering a cell to prevent an active attack by one inmate upon another so long as the attacker refused to submit to handcuffs. As improbable as such a policy seems to the Court, that is the allegation made by Plaintiff, and at this stage of the litigation the Court must accept it as true. It is clearly established that prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 833. It is a clear violation of that duty to have knowledge of an inmate's impending attack upon another and to walk away from that attack without intervening, as Defendants' alleged policy would require, and as is alleged here. Therefore, Defendants' claim of qualified immunity is unavailing at this stage of the litigation, and their motion should be denied on that ground as well.

## CONCLUSION

WHEREFORE, for the reasons explained above, it is RECOMMENDED that Defendants' motion to dismiss the complaint (ECF No. 8) be DENIED. It is further recommended that the stay of discovery ordered on April 9, 2014 be lifted upon the ruling by the district judge on the motion and this Report and Recommendation. Under 28 U.S.C. § 636(b)(1), the parties may file objections to this Recommendation in writing with the United States District Judge within fourteen (14) days after being served with a copy hereof.

SO RECOMMENDED, this 20th day of August, 2014.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE