**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **EUGENE TRAMMELL,** )<br><br>**Plaintiff,** )<br><br>**v.** )<br><br>**BRIAN OWENS, et al.,** )<br><br>**Defendants.** )<br>_____ ) | **CIVIL ACTION NO. 5:13-CV-441 (MTT)** |

## <u>ORDER</u>

Plaintiff Eugene Trammell, a former inmate at Georgia State Prison ("GSP"), filed this § 1983 action against Georgia Department of Corrections ("GDOC") Commissioner Brian Owens and former GSP Warden Bruce Chatman.  The Plaintiff claims that the Defendants, through their policies, deprived him of his Eighth Amendment rights.  The Defendants claim they are entitled to qualified immunity for their actions.  Before the Court is the Recommendation of United States Magistrate Judge Stephen Hyles (Doc. 12) to deny the Defendants' motion to dismiss (Doc. 8).  The Defendants did not timely object to the Recommendation.[1]

### I. FACTUAL BACKGROUND[2]

This case arises out of an alleged attack on the Plaintiff by fellow inmate Travonta Mitchell.  (Doc. 1 at ¶ 8).  Mitchell was a former gang member known to be "assaultive" to other inmates.  (Doc. 1 at ¶ 9).  On November 29, 2011, Mitchell

---

[1] The Court notes that the Defendants filed an untimely objection to the Recommendation, to which the Plaintiff filed a timely response.

[2] The facts are taken from the allegations in the complaint and accepted as true for purposes of the motion.

threatened the Plaintiff while both were housed at GSP in Unit G-2. (Doc. 1 at ¶ 9). The Plaintiff "started banging on the cell door" and Officer Rodman responded. (Doc. 1 at ¶ 9). After the Plaintiff informed Officer Rodman of Mitchell's threat, Officer Rodman called the officer-in-charge, Sergeant John Johnson. (Doc. 1 at ¶ 9). When Sergeant Johnson arrived, the Plaintiff told him about Mitchell's threat. (Doc. 1 at ¶ 9). Sergeant Johnson instructed Mitchell "to place his hands through the door slot to be hand cuffed." (Doc. 1 at ¶ 9). When Mitchell refused to "cuff up," Sergeant Johnson told the Plaintiff "there's nothing I can do" and left. (Doc. 1 at ¶ 9). Mitchell then attacked the Plaintiff with a razor blade.

Officer Rodman later returned to the unit with the "pill nurse," and the Plaintiff told him about the attack. (Doc. 1 at ¶ 9). Officer Rodman told the Plaintiff there was nothing he could do. Officers McNeal and Hall also came to the cell door, saw that the Plaintiff had been cut, and left. Finally, Officers Rodman, McNeal, and Hall returned to the cell and stopped the attack. (Doc. 1 at ¶ 9). By that time, the Plaintiff had been slashed across the face with a razor, "causing an eight inch slash requiring 60 stitches [] and leaving a permanent scar." (Doc. 1 at ¶ 9). The Plaintiff does not specify how much time passed between these encounters with the officers or how long the attack was ongoing.

The Plaintiff alleges Defendant Owens, as GDOC Commissioner, is responsible for the supervision of operations at the GDOC. "This responsibility includes the development, implementation, and maintenance of policies and procedures which protect prisoners from attacks from other prisoners. He is the highest ranking official in the GDOC." (Doc. 1 at ¶ 6). The Plaintiff alleges Defendant Chatham, as GSP Warden

at the time of the attack, was responsible "for the day to day operations, supervision, and oversight of [GSP], including the establishment and implementation of practices and policies concerning inmate safety."  (Doc. 1 at ¶ 7).

The Plaintiff alleges the Defendants were responsible for two policies that caused his injuries: (1) they "require[d] correctional officers to hand cuff inmates engaged in an attack against another inmate before officers may enter the cell to stop the attack," and (2) they "provide[d] razor blades in the form of shaving implements to inmates."  (Doc. 1 at ¶ 10).  The Plaintiff further alleges that the "Defendant correctional officials have acted with negligence, carelessness, recklessness and deliberate indifference to the safety of [the Plaintiff] at [GSP]."  (Doc. 1 at ¶ 3).

## II. DISCUSSION

### A.  Motion to Dismiss Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679.  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*,

297 F.3d 1182, 1188 (11th Cir. 2002).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

### B. Qualified Immunity Standard

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'"[3]  *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach,* 561 F.3d 1288, 1291 (11th Cir. 2009)).  To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation."  *City of W. Palm Beach*, 561 F.3d at 1291.  This two-step analysis may be done in whatever order is deemed most appropriate for the case.  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The clearly established law must provide a defendant with "fair warning" that his or her conduct deprived the plaintiff of a constitutional right.  *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002).  A plaintiff "can demonstrate that the contours of the right were clearly established in several ways."  *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012).  First, a plaintiff can show that "a materially similar case has already been

---

[3] None of the Parties dispute that the Defendants were performing discretionary duties.  Accordingly, the Plaintiff has the burden to show that qualified immunity does not apply.

decided." *Id.* (internal quotations and citations omitted).  Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Id.* (internal quotations and citation omitted).  "Finally, the conduct involved in the case may 'so obviously violate[ ] th[e] constitution that prior case law is unnecessary.'" *Id.* (internal citations omitted).  Clearly established precedent in this Circuit means decisions of the United States Supreme Court, the Eleventh Circuit, and the highest court of the pertinent state.  *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

### C. The Plaintiff's Claims[4]

The Plaintiff has sued the Defendants pursuant to 42 U.S.C. § 1983 for violations of his Eighth Amendment rights.  Under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates."  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)) (internal quotation marks omitted).  More to the point, they "have a duty to protect prisoners from violence at the hands of other prisoners."  *Id.* (quoting *Farmer*, 511 U.S. at 833) (internal quotation marks omitted).  Not every injury that one inmate suffers at the hands of another inmate gives rise to constitutional liability, but a prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the

---

[4] "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).  The Plaintiff's assertions that the Defendants' procedures were inadequate to protect inmates from attacks by other inmates and the Defendants were deliberately indifferent to the risk posed by these deficiencies are legal conclusions that carry no weight. *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013).

official does not respond reasonably to the risk." *Id.* (quoting *Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir.2003)) (internal quotation marks omitted).

To plead a failure to protect claim under the Eighth Amendment, a plaintiff must allege facts that show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir. 2013) (internal quotation marks omitted); *Losey v. Warden*, 521 F. App'x 717, 719 (11th Cir. 2013). The first element – risk of harm – is viewed objectively. *Caldwell*, 748 F.3d at 1099. The second element – whether the defendants were deliberately indifferent to that risk – has both a subjective and objective component. The plaintiff must show the defendants subjectively knew the inmate faced a substantial risk of serious harm and that the defendants disregarded that risk by not responding in an objectively reasonable manner. *Id.*; *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007). A prison official has subjective knowledge when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and when he "also draw[s] the inference." *Farmer,* 511 U.S. at 837; *Caldwell*, 748 F.3d at 1099-1100. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.

The Plaintiff has not sued the correctional officers who failed to protect him from the attack alleged in the complaint. The Plaintiff makes no allegation that the Defendants personally participated in the attack. Nor does the Plaintiff allege that the Defendants were aware of the threat made to the Plaintiff, or of the response

correctional officers made to that threat.  Rather, the Plaintiff alleges that the Defendants established and enforced policies that led to the violation of the Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  The Defendant's potential liability, therefore, can only result from their role as policymakers.[5]

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)).  To establish the Defendants' liability as policymakers, the Plaintiff must prove that the Defendants enacted or enforced the policies "with the requisite degree of culpability."[6]  *Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397, 404 (1997).  And although the Defendants are policymakers who did not personally participate in the assault on the Plaintiff, the Defendants may still be liable if "there is a casual connection between the actions of the [Defendants] and the alleged constitutional deprivation."  *Matthews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).  "[T]he causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"

---

[5] This complaint essentially alleges a claim identical to a municipal liability claim, i.e., that a city or county is liable for enacting policies that resulted in a constitutional deprivation.  The analysis used in municipal liability claims has proven helpful in determining whether policymakers sued in their individual capacity have been deliberately indifferent in their supervision of subordinates.  *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1036 n.17 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Greason v. Kemp*, 891 F.2d 829, 837 (11th Cir. 1990).

[6] *Brown* involves a municipal liability claim against a county for a decision made by its policymaker.  But as noted, claims against policymakers in their individual capacity are governed by similar principles.

*Cottone*, 326 F.3d at 1360 (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234-35 (11th Cir. 2003)).

This standard is "extremely rigorous." *West*, 496 F.3d at 1329 (quoting *Cottone*, 326 F.3d at 1360). If the Defendants enacted facially unconstitutional policies, "resolving these issues of fault and causation is straightforward." *Brown*, 520 U.S. at 404. It is well established, however, that if the Defendants enacted facially constitutional policies, the Defendants must have "had actual or constructive notice of a flagrant, persistent pattern of violations." *Harrison v. Culliver*, 746 F.3d 1288, 1301 (11th Cir. 2014) (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (2007)). *Cf. AFL-CIO v. City of Miami*, 637 F.3d 1178, 1187 (11th Cir. 2011) (noting that a facially-lawful municipal action must have been taken with "'deliberate indifference' as to its known or obvious consequences"). Therefore, "[a]n official cannot be held liable just for instituting a facially constitutional policy." *Marsh*, 268 F.3d at 1036.

The Plaintiff does not allege the Defendants' policies are facially unconstitutional. Nor could he. Surely, providing shaving implements to allow inmates to shave is not unconstitutional. In addition, requiring correctional officers to handcuff inmates engaged in an attack against another inmate before officers enter a cell to stop an attack could very well increase the security and safety of inmates and correctional officers involved. This policy could be applied humanely and properly. *See Marsh*, 268 F.3d at 1036. At the very least, it is not facially unconstitutional. The Defendants' policies are not so "'obviously' a danger to inmates to the degree that the allegation of the policy itself is an allegation of personal awareness on the [Defendants'] part of an excessive risk of serious harm to inmates just because the policy exists." *Id.*

The Plaintiff makes no effort to allege facts that would support a finding that the Defendants were deliberately indifferent in enacting or enforcing the facially constitutional policies.  For example, the Plaintiff has not alleged that the Defendants had actual knowledge that the policies were being implemented in a way that deprived inmates of their constitutional rights.  Nor has the Plaintiff alleged any other incidents of harm resulting from these policies such that this Court can attribute constructive knowledge to the Defendants.  The Plaintiff points only to his own attack, which correctional officers other than the Defendants allegedly failed to stop.  This single incident is insufficient to state a claim against the Defendants.  *See Marsh*, 268 F.3d at 1037; *Goebert*, 510 F.3d at 1332.

In short, the Plaintiff has not alleged a violation of a constitutional right under the "extremely rigorous" standard of supervisory liability.  *West*, 496 F.3d at 1329 (quoting *Cottone*, 326 F.3d at 1360).  Thus, he has not met his burden under the first prong of the qualified immunity analysis.

Nor has the Plaintiff met his burden under the second prong.  He has made no effort to show that clearly established law would have alerted these Defendants as they enacted or enforced policies that they were depriving inmates of their constitutional rights.  Arguably, clearly established law would have alerted the correctional officers allegedly present when the Plaintiff was assaulted that their failure to intervene was unconstitutional.  *See Caldwell*, 748 F.3d at 1102.  But the Plaintiff has not sued those officers.  Rather, he has sued policymakers who had no involvement in the assault and he points to no clearly established law that would have suggested to them that their policies were unconstitutional, either as enacted or as enforced.

Accordingly, the Defendants are entitled to qualified immunity.  Therefore, the Magistrate Judge's Recommendation is **REJECTED**, and the Defendants' motion to dismiss (Doc. 8) is **GRANTED**.

      **SO ORDERED**, this 23rd day of September, 2014

                    S/ Marc T. Treadwell
                    MARC T. TREADWELL, JUDGE
                    UNITED STATES DISTRICT COURT